UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 13-273 (SRN/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Lachlan Scott McConnell (06), | |
| Defendant. | |

Linda Marks and Roger Gural, Assistant United States Attorneys, for Plaintiff.
Ryan Pacyga for Defendant Lachlan Scott McConnell.

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 9, 2016, on Defendant Lachlan Scott McConnell's motion to suppress (ECF No. 599), motions to dismiss and suppress (ECF Nos. 600, 604, and 616), and motions to suppress electronic surveillance (ECF Nos. 603 and 623). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, both the Government and McConnell offered testimony and entered exhibits into evidence.[1] For the reasons

---

[1] Government exhibit 1 is DEA Form 13 Advice of Rights, signed on June 1, 2016; Government exhibit 2 is a waiver of prompt presentment and location of presentment form, signed on June 1, 2016; Government exhibit 3 is DEA Form 88 Consent to Search, signed on June 1, 2016; Government exhibit 4 is DEA Form 88 Consent to Search, signed on June 1, 2016; Government exhibit 8 is a Republic of the Philippines Affidavit signed on May 31, 2016, and McConnell's correspondence with Gregorio Sadiasa, Philippine Bureau of Immigration official, dated May 28, 2016; Government exhibit 9 is DEA Form 13-A Oral Warnings to be Given to a Subject Prior to Interrogation, signed on April 19, 2016.

McConnell exhibit A is a Justice Department Policy Concerning Electronic Recording of Statements; McConnell exhibit B is an email correspondence between Andrew Birrell and Ryan Pacyga; McConnell exhibit C are text messages shared

that follow, the Court recommends that McConnell's motions be **DENIED**.

## I. THE INDICTMENT

On October 9, 2013, the Government filed a criminal Complaint against McConnell and ten co-defendants. On November 13, 2013, a Grand Jury returned the Indictment against McConnell and the co-defendants and a warrant was issued for McConnell's arrest. *See* Indictment, ECF No. 5. The Indictment alleges that McConnell is an associate of RX Limited, an organization that allegedly marketed and sold illegal prescription drugs in the United States. ¶ 1. According to the Indictment, RX Limited affiliated physicians, and persons posing as physicians, approved prescription drug orders placed through RX Limited's marketing websites and toll-free phone numbers. *Id.* ¶ 3–4. RX Limited allegedly paid each physician, and persons posing as a physician, a commission for the approved prescriptions. *Id.* RX Limited also allegedly paid pharmacies based in the United States to fill prescriptions. *Id.* Once a prescription was filled, the drugs were shipped to RX Limited's customers via commercial carriers, including Federal Express and the United States Postal Service. *Id.* Shipment charges were paid by RX Limited through accounts controlled by its associates. *Id.*

McConnell, a Canadian citizen living at different times in the United States and the Republic of the Philippines, was allegedly an RX Limited associate who facilitated various aspects of its operations, including creating 'front' corporations, bank accounts, credit cards, shipping accounts, and pharmacy recruitment in the United States. *Id.* ¶ 10. McConnell is accused of conspiring with

> between McConnell and Agent Mueller; McConnell exhibit D is a WhatsApp chat shared between McConnell and Agent Mueller; McConnell exhibit E is McConnell's travel itinerary to the United States; McConnell exhibit F is McConnell's travel itinerary to the United States; McConnell exhibit G is McConnell's May 28, 2016, correspondence with Gregorio Sadiasa; McConnell exhibit H is a Republic of the Philippines Bureau of Immigration Charge Sheet. *See* Ex. List, ECF No. 648.

other alleged RX Limited associates to secure revenue and profits for the organization by selling illegal prescription drugs. *Id.* ¶ 11–14.

McConnell has been charged with the following crimes: one count of conspiracy to violate the Federal Food, Drug, and Cosmetic Act, in violation of 18 U.S.C.§ 371; eleven counts of introducing misbranded drugs into interstate commerce, in violation of 18 U.S.C.§§ 353(b)(l), 331(a), and 333(a)(2), and 18 U.S.C.§ 2; one count of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349; eleven counts of mail fraud, in violation of 18 U.S.C.§§ 1341 and 1342; six counts of wire fraud, in violation of 18 U.S.C. §§ 1342 and 1343; five counts of unlawful distribution and dispensing of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(E), 18 U.S.C.§ 2, and 21 C.F.R. § 1306.04; and five counts of unlawful distribution and dispensing of controlled substances, in violation of 21 U.S.C. §§ 841(h)(1), (h)(4), (b)(1)(E), and 18 U.S.C.§ 2.

## II. FACTUAL BACKGROUND

Testimony during the November 9, 2016, hearing established that although the Government knew McConnell was living in the Philippines when the Indictment was filed, it did not make arrangements for McConnell's immediate arrest. McConnell himself learned of the Indictment from a *New York Times* investigative reporter. In spring 2014, McConnell contacted the Federal Defender's Office for the District of Minnesota and was appointed CJA counsel, Andrew Birrell and Paul Dworak. Throughout 2014, Birrell and Dworak contacted McConnell and exchanged a series of emails and phone conversations with him regarding the Indictment. In August 2014, Birrell and Dworak notified the Government that McConnell was interested in cooperating and they discussed options for his transport to the United States. Birrell and Dworak testified that they continued to

negotiate on McConnell's behalf until at least early 2015.

At some point, the Canadian Government revoked McConnell's passport and the United States Drug Enforcement Agency ("DEA") notified the Philippine Government of McConnell's outstanding arrest warrant in the United States. In early April 2016, the Philippine Government charged McConnell with being an unwanted/undesirable based on his fugitive status in the United States and his Canadian passport revocation. *See* McConnell Ex. H.

On April 19, 2016, several Philippine agents arrested McConnell on the Philippine immigration charge at his place of employment in Makati, Philippines. DEA Agent Christopher Mueller was present during the arrest, but did not assist Philippine authorities in placing McConnell into custody. McConnell was then transported to the Philippines Bureau of Immigration Office in Manila, and questioned by Agent Mueller. Agent Mueller presented McConnell with DEA Form 13-A: Oral Warnings to be Given to a Subject Prior to Interrogation. *See* Gov't. Ex. 9. The Form apprises a suspect of: the right to remain silent, that statements may be used against them, the right to an attorney, and the right to have an attorney appointed if they cannot afford counsel. McConnell reviewed and signed the Form and was briefly questioned by Agent Mueller.

McConnell was then detained for over forty days at a holding facility in Bicutan, Philippines, pending his deportation. At the November 9, 2016, hearing McConnell testified that during his detention, he was in regular contact with Agent Mueller, his close friend Jeff Williams, and Canadian officials. McConnell was generally cooperative with Agent Mueller. McConnell testified that he had a long history of working with members of law enforcement and military intelligence. McConnell stated that conditions at the Philippine detention facility were substandard and, at times, dangerous. McConnell claimed that he cooperated with Agent Mueller because he was promised

expedited release from the detention facility in exchange for his assistance. McConnell testified that he would have preferred to have been deported from the Philippines to Canada, but he worked with Agent Mueller to arrange direct transit to the United States to hasten his release. McConnell testified that he was permitted to use his cellular phone and two laptop computers, and had access to his hard drives, a printer, thumb drive, and the internet while at the Philippine detention facility. McConnell testified that he did not contact Birrell or Dworak during his detention.

McConnell testified that while in custody in the Philippines, he asked Agent Mueller if the DEA could repair his inoperable hard drive because he thought Agent Mueller might be able to use it in his investigation. McConnell asked Jeff Williams to deliver the inoperable hard drive to Agent Mueller. However, Williams gave Agent Mueller not only the inoperable hard drive, but two additional hard drives. McConnell testified that he was surprised Williams turned over the two additional hard drives, but he did not ask Agent Mueller to return them.

On June 1, 2016, McConnell was transported by commercial airline from the Philippines to Los Angeles, escorted by Agent Mueller and another DEA agent. McConnell testified that Agent Mueller sat next to him during the thirteen hour flight. McConnell testified that when he asked Agent Mueller to use the restroom, Agent Mueller rose to let him pass and remained standing until he returned. During the flight, Agent Mueller gave McConnell a wavier of prompt presentment and location of presentment form. McConnell read the form and Agent Mueller advised him that he could sign it in Los Angeles when the flight landed.

McConnell testified that when the plane landed, he was escorted by DEA agents off the plane and into an interview room. While in the interview room, DEA Agent Kimberly Brill notified McConnell that he was under arrest, informed him of his *Miranda* rights, and presented him with a copy of DEA Form 13: Advice of Rights, which McConnell reviewed and signed. *See* Gov't. Ex.

1. McConnell testified that he was treated well during the flight and while processed in Los Angeles.

McConnell was then questioned by DEA Agent Mark Rosborg and Agent Brill. During the interview, McConnell stated that he was in possession of two laptop computers and a cellular phone. Agent Brill then presented McConnell with two copies of DEA Form 88: Consent to Search. The Consent to Search Forms identified McConnell's seized electronic devices that agents wanted to search: the three hard drives that Williams gave Agent Mueller, McConnell's two laptop computers, and his cellular phone. McConnell reviewed and signed the Consent to Search Forms. *See* Gov't. Exs. 3–4. McConnell also signed the wavier of prompt presentment and location of presentment form. *See* Gov't. Ex. 2.

Around midnight, Agent Brill escorted McConnell on a flight to Minnesota, which landed the following day, June 2, 2016, at 5:30 a.m. Later that day, McConnell was presented and arraigned before Magistrate Judge Tony Leung in St. Paul, Minnesota, and released to a local halfway house.

The following day, Agent Brill returned several of McConnell's personal items, but kept a flash drive found in his luggage that he could not possess while living at the halfway house. Agent Brill testified that while at the halfway house, McConnell volunteered the password to one of his laptop computers and offered to show her the location of certain material stored on the device.

### III. CONCLUSIONS OF LAW

**A.  Motion to Suppress (ECF No. 599)**

McConnell moves to suppress the various electronic devices searched and seized between his Philippine detention and his deportation to the United States. Def.'s Mot. to Suppress 1, ECF No. 599. Specifically, McConnell moves to suppress the search and seizure of his:

* Dell laptop s/n BFNTGP1
* ASUS laptop 8B0AAQ4G416
* Western Digital 2.0 TB data hard drive, model 1

>    50014EE2AD4489F1 (labeled "Defective")
>    * Seagate 500 GB Slim Portable Drive, p/n 1E7AN4-501, s/n NA715FFV
>    * Seagate 500 GB Slim Portable Drive, p/n 1E7AN6-600, s/n NA4QDJFJ
>    * cellular phone
>    * black flash drive.[2]

*Id.* McConnell argues that the warrantless search and seizure of these electronic items violated his Fourth Amendment rights, because to the extent that he consented, his consent was coerced. Def.'s Supplementary Mot. to Suppress 28–30, ECF No. 652. McConnell points to Agent Mueller's alleged promise of expedited release from the Philippine detention facility in exchange for his assistance as evidence of Government coercion. *Id.* at 29. The Government responds that the McConnell freely and voluntarily consented to the search and seizure and that Fourth Amendment protections do not extend to the electronic devices seized in the Philippines. Supplementary Opp'n Mem. 47–49, ECF No. 667.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Consent functions as an exception to the Fourth Amendment warrant requirement, but the Government carries the "burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper*

---

[2] The Government claims that the black flash drive contains classified material. The Government contends that the discoverablilty and admissibility of the classified material must be determined at a later date by the presiding judge pursuant to the Classified Information Procedures Act ("CIPA"). *See* 18 U.S.C. App. III; Gov't. Notice to Invoke CIPA, ECF No. 681. In any event, this Report and Recommendation only addresses Fourth Amendment issues presented by the Government's seizure and search of the devices in question. The Court herein expresses no opinion regarding any document the Government claims to be classified.

*v. North Carolina*, 391 U.S. 543, 548 (1968). "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Id.* at 548–49. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

However, "the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *United States v. Cedano-Medina*, 366 F.3d 682, 685 (8th Cir. 2004) (internal quotation marks omitted). A suspect "can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person intends to consent." *Id.* In determining whether consent was coerced, courts consider the following factors regarding the defendant: (1) his age and mental ability; (2) whether he was intoxicated or under the influence of drugs; (3) whether he was informed of his *Miranda* rights; and (4) whether he was aware, through prior experience, of the protections that the legal system provides for suspected criminals. *See United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010).

The Government argues that the Fourth Amendment does not extend to the seizure of McConnell's hard drives in the Philippines because McConnell is a Canadian citizen and lacks sufficient connections to the United States. ECF No. 667 at 47–50. *See, e.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (holding that aliens arrested outside the United States who lack a substantial or sufficient connection to the United States are not protected by the Fourth Amendment). The Court need not consider this argument because it concludes that McConnell voluntarily consented to the search and seizure of his electronic devices.

McConnell is a middle-aged, Canadian professional who can read and write English. At the

8

November 9, 2016, hearing McConnell testified that he was treated well when processed by federal agents and that he had extensive familiarity working with law enforcement and military intelligence. McConnell reviewed and signed an Advice of Rights and an Oral Warnings to be Given to a Subject Prior to Interrogation Forms. Gov't. Exs. 1, 9. Although McConnell testified that conditions at the Philippine detention facility center were substandard, he admitted to maintaining possession of his cellular phone and two laptop computers, and that he had access to his hard drives, printer, thumb drive, and the internet throughout his detention. Throughout his detention in the Phillippines, McConnell maintained constant contact with Agent Mueller. McConnell was fully aware of his right to counsel and testified that he had several communications with his attorneys, Birrell and Dworak, regarding the Indictment prior to his Philippine detention.

McConnell testified that he told Agent Mueller about the inoperable hard drive because he thought Agent Mueller might be able to use it, and instructed his friend, Jeff Williams, to turn the hard drive over to Agent Mueller. McConnell testified that although he was surprised that Williams turned over the two additional hard drives, he made no attempt to contact Agent Mueller on his several available electronic devices to request that the hard drives be returned nor did McConnell ever communicate to Agent Muller that he did not consent to their disclosure. In fact, McConnell testified that two weeks after Williams turned the hard drives over, he followed-up with Agent Mueller regarding content on one of the extra hard drives. Under the circumstances, Agent Mueller's belief that all the hard drives were part of a common disclosure was not unreasonable. *See Cedano-Medina*, 366 F.3d at 684–85.

Similarly, McConnell voluntarily turned over his two laptop computers and cellular phone to Agent Brill and voluntarily agreed to the search of all the electronic devices when he signed the Consent to Search Forms in Los Angeles. Furthermore, Agent Brill testified that after McConnell

9

signed the Consent to Search Forms, he assisted the search by offering the password to one of his laptop computers and the location of certain, stored items on the device. Even assuming Agent Mueller promised McConnell expedited release from the Philippine detention facility in exchange for assistance, McConnell continued to voluntarily assist the Government after he was transported to the United States. In sum, the totality of the circumstances show that McConnell voluntarily consented to the search and seizure of the electronic items. *Schneckloth*, 412 U.S. at 227. Therefore, his motion to suppress this evidence must be denied.

**B.	Motions to Dismiss and Suppress Statements (ECF No. 600, 604, 616)**

**1.	Statements**

McConnell argues that his April 19, 2016, and June 1, 2016, statements were obtained in violation of rights guaranteed by the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and the Sixth Amendment. Mots. to Suppress, ECF Nos. 600, 604, and 616. The Government argues that McConnell waived his Fifth and Sixth Amendment rights. ECF. No. 667 at 15.

The Fifth Amendment ensures that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In order for evidence obtained as a result of a custodial interrogation to be used against a defendant at trial, the Fifth Amendment requires that law enforcement advise the defendant of his constitutional rights and that the defendant make a valid waiver of those rights. *See Miranda*, 384 U.S. at 444. Before questioning begins, a suspect in custody must be informed of the following: (1) that he has the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. *Id.* at 444, 469–70, 478–79. After the warnings are given, if the suspect indicates that he wishes to assert these rights, the interrogation

must stop. *See Id.* at 473–74. Statements elicited from a suspect in violation of *Miranda* are inadmissible. *Stansbury v. California*, 511 U.S. 318, 322 (1994).

Once advised of *Miranda* rights, a suspect's waiver of his Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. *See Miranda*, 384 U.S. at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010). A waiver is made knowingly if it is "made with a full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* It is the Government's burden to show that the suspect's waiver meets these standards. *Miranda*, 384 U.S. at 475.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. It is well-established that "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

A defendant's Sixth Amendment right is violated whenever, in the absence of counsel, federal agents deliberately elicit statements from him. *See Massiah v. United States*, 377 U.S. 201, 204–205 (1964). The Supreme Court has consistently applied the "deliberate elicitation" standard to Sixth Amendment violations, and expressly distinguished it from the custodial interrogation standard applicable to Fifth Amendment violations. *United States v. Fellers*, 540 U.S. 519, 524 (2004). While the Court continues to apply different standards to the Fifth and Sixth Amendments to determine whether a violation has occurred, the standard for whether there has been a waiver of rights is the same under both the Fifth and Sixth Amendments; whether the waiver was voluntary,

knowing, and intelligent. *Montejo*, 556 U.S. at 786.

A defendant may waive his Sixth Amendment right "whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* "And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment." *Id.* (emphasis in original) (citing *Patterson v. Illinois*, 487 U.S. 285, 296 (1988) ("As a general matter . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.")).

The Court concludes that McConnell knowingly, voluntarily, and intelligently waived his Fifth and Sixth Amendment rights. Shortly after his April 19, 2016, arrest in the Phillippines, McConnell read and signed an Oral Warnings to be Given to a Suspect Prior to Interrogation Form, apprising him of his: right to remain silent, that statements may be used against him, right to counsel, and right to have an attorney provided. *See* Gov't. Ex. 9. McConnell testified that after he signed the Form, he was briefly questioned by Agent Mueller and concluded the interview by shaking Agent Mueller's hand. Crucially, this questioning took place before McConnell's Philippine detention and before he claims that he offered assistance in exchange for expedited release. Under the totality of the circumstances, the record does not support a finding that Agent Mueller's interview of McConnell on April 19, 2016, violated McConnell's Fifth or Sixth Amendment rights.[3]

---

3

    Unlike the facts in *Fellers*, where agents deliberately elicited statements from the defendant in the absence of counsel and without a waiver of counsel, McConnell was advised of his right to counsel and voluntarily waived it before making any

Similarly, Agent Brill testified that McConnell read and signed an Advice of Rights Form, apprising him of his *Miranda* rights prior to being questioned in Los Angeles. *See* Gov't. Ex. 1. McConnell testified that he was treated well by agents in Los Angeles. Again, under the circumstances, the record does not demonstrate that McConnell's waiver of his Fifth and Sixth Amendment rights were anything but knowing, voluntary, and intelligent. *Miranda*, 384 U.S. at 444. His motions must, therefore, be denied.

**2.     Presentment**

McConnell argues that the Government violated his prompt presentment right under Rule 5 of the Federal Rules of Criminal Procedure. ECF No. 652 at 40. McConnell contends that he was, in effect, arrested on the federal warrant on April 19, 2016, when Agent Mueller, acting in concert with Philippine immigration authorities, took him into custody, advised him of his rights, and briefly interviewed him, before detaining him in the Philippine detention center. As he was not taken before a federal magistrate judge until June 2, 2016, McConnell argues that he was not taken without unnecessary delay before a magistrate judge as required by Rule 5. *See* Fed. R. Crim. P. 5(a). McConnell requests that the Court craft a remedy for this violation "up to and including dismissal [of the Indictment] with prejudice." ECF No. 652 at 40. Congress, however, has already crafted the remedy for such violations. It is set forth in 18 U.S.C. § 3501, a statutory modification of the rule the Supreme Court had long before adopted in *McNabb v. United States*, 318 U.S. 332 (1943), and

---

incriminating statements. Moreover, that McConnell was already represented by counsel when he was arrested and questioned, in no way impacts his own capacity to waive his right to have counsel present for the questioning. *See Moran*, 475 U.S. at 420–23.

*Mallory v. United States*, 354 U.S. 449 (1957).[4]

The Government argues that McConnell waived his prompt presentment right under Rule 5 by signing a waiver of prompt presentment and location of presentment form when he landed in Los Angeles. ECF No. 667 at 33–35. Rule 5(a) of the Federal Rules of Criminal Procedure provides that, following an arrest, the arresting officer "must take the defendant without unnecessary delay before a magistrate judge." *United States v. Casillas*, 792 F.3d 929, 930 (8th Cir. 2015) (quoting *Corley*, 556 U.S. at 309). "[C]onfessions made during periods of detention that violate [Rule 5(a)'s] prompt presentment requirement" are "generally render[ed] inadmissible." *Id.*

The Court rejects the Government's argument that a defendant can waive their right to prompt presentment. The entire purpose of the *McNabb-Mallory* rule, as modified by Section 3501, was to eliminate the practice of keeping a defendant in custody from appearing in court where the Federal Rules of Criminal Procedure will apply and the executive's power over the prisoner will be tempered by the workings of the judicial process. The Court concludes that the document upon which the Government relies was ineffective to discharge the Government's obligation to take the defendant before a magistrate judge. The prompt presentment duty imposed by Rule 5, in the context of the facts here, cannot be discharged by the use of a document. The agents here could only discharge their duty under Rule 5 by physically taking the prisoner before the Court so that the judicial process would commence.[5]

---

4    18 U.S.C. § 3501 remains good law, even though the related provision that purported to overrule *Miranda*, 384 U.S. at 436, was expressly found unconstitutional in *Dickerson v. United States*, 530 U.S. 428 (2000). *See Corley v. United States*, 556 U.S. 303, 309 (2009).

5    The document upon which the Government predicates its waiver argument is not Form AO 466A Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment). That document, on its face, appears to be designed for use in court after a defendant has

Whether the Government here met its obligation under Rule 5, turns in the first instance on whether Agent Mueller arrested McConnell on the pending Indictment on April 19, 2016, in the Philippines, as McConnell argues. ECF No. 652 at 4, 25. Although the question is a close one, the Court concludes that Philippine authorities independently arrested McConnell on a Philippine immigration charge filed in early April 2016. In fact, McConnell testified that Agent Mueller, although present at his arrest, did not assist Philippine agents in placing him into custody. Moreover, McConnell testified that it was a Philippine agent that informed him of the outstanding Philippine immigration charge and it was a contingent of at least three Philippine agents that escorted him from his work, handcuffed him, placed him in a van, and transported him to the Philippine Bureau of Immigration Office in Manilla. It was Philippine authorities that transported McConnell to the Bicutan detention facility, detained him there for over forty days on the Philippine immigration charge, and it was a Philippine immigration official, Gregorio Sadiasa, who appears to have approved McConnell's release to DEA agents on June 1, 2016. *See* Gov't. Ex. 8; McConnell Ex. G.

The moment in which the Government's obligations under Rule 5(a) attached was on June 1, 2016, when Philippine authorities transferred McConnell into the custody of DEA agents for transport to the United States. Whether statements McConnell made after being taken into custody, but before appearing in court, ran afoul of the prompt presentment requirement turns on whether the nearly twenty-four hour delay was "reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer." 18 U.S.C. § 3501(c); *See, e.g., United States v. Alvarez-Sanchez*, 511 U.S. 350, 358–60 (1994) (holding that

---

been appointed and received the advice of counsel. The Court is aware of no circumstances in this Circuit in which a Court has held that the prompt presentment requirement of Rule 5 is satisfied by the use of a written waiver without an actual court appearance.

"[u]ntil a person is arrested or detained for a federal crime, there is no duty, obligation, or reason to bring him before a judicial officer . . . and therefore, no 'delay' under § 3501(c) can occur.").[6] The record shows that McConnell was taken into custody by DEA agents in the Philippines and had to travel to the United States to appear in court. As the agents took a direct thirteen hour flight from the Philippines to Los Angeles, the Court concludes that delay was reasonable under 18 U.S.C. § 3501(c). That flight did not arrive in the United States until around 7:00 p.m. on June 1, 2016. Irrespective of where McConnell was presented, he would not have appeared before a magistrate judge until the following day, June 2, 2016; the day McConnell was presented before Magistrate Judge Tony Leung. Given the length of McConnell's international flight and the hour in which it landed, there was also no unnecessary delay in his presentment under Rule 5(a).

McConnell also argues that the Government was required, under Federal Rule of Criminal Procedure 5(c)(2), to present him before a magistrate judge in the Central District of California, the district covering his 'formal' Los Angeles arrest. ECF No. 652 at 21. The Government, again, argues that McConnell waived his Rule 5 rights by signing a waiver of prompt presentment and location of presentment form. ECF No. 667 at 33. The Court has already rejected the Government's waiver

---

[6] The Court expressly rejects the Government's argument that McConnell's presentment rights were not triggered until his flight landed in Los Angeles and he was placed under 'formal' arrest. 18 U.S.C. § 3501(c) specifically provides that the time requirements regarding confessions apply to not only those defendants formally arrested, but for those in "other detention in the custody of any law-enforcement officer or law enforcement agency." McConnell, flanked by two federal agents during the thirteen hour flight to Los Angeles, escorted off the plane by several federal agents, and transported to the United States on an outstanding arrest warrant, was surely in other detention and in the custody of law enforcement agents while transiting to the United States and before his 'formal' arrest. *See, e.g., Alvarez-Sanchez*, 511 U.S. at 358–60 (emphasis added) (reasoning that the Government's obligation under Section 3501(c) applies to a person "arrested or *detained*.").

argument. The question is now whether McConnell's appearance before Magistrate Judge Tony Leung on June 2, 2016, complied with the Government's obligation under Rule 5. As McConnell was arrested outside the United States his initial appearance is governed by Rule 5(a)(1)(B), which provides that "a person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(B).

On June 1, 2016, McConnell was transferred by Philippine authorities to DEA agents. This transfer was conducted pursuant to an outstanding arrest warrant issued in the United States on the pending Indictment. McConnell was then transported by two DEA agents from the Philippines to the United States on that warrant. Whether or not McConnell was 'formally' placed under arrest in Los Angeles is not controlling. The question, rather, is whether there was an "actual or constructive seizure" of McConnell "performed with the intention to effect an arrest and so understood by the person detained." *United States v. Chaffen*, 587 F.2d 920, 923 (8th Cir. 1978). Under the circumstances, the Court concludes that McConnell was arrested by DEA agents on June 1, 2016, when they took possession of him in the Philippines for the purpose of transporting him to the United States on the outstanding arrest warrant, and that McConnell understood this action was an arrest considering his knowledge of the pending Indictment and numerous conversations with Agent Mueller. *See Id.* Given that McConnell was arrested by DEA agents in the Phillipines on June 1, 2016, the Government's location of presentment obligation was to bring McConnell before "*a* magistrate judge" under Rule 5(a)(1)(B); an obligation the Government satisfied by presenting McConnell before Magistrate Judge Tony Leung on June 2, 2016. Fed. R. Crim. P. 5(a)(1)(B) (emphasis added). Put differently, the Court concludes that the statements made by McConnell after he was taken into custody by DEA agents on June 1, 2016, in the Philippines and before his

apperance before Magistrate Judge Tony Leung on June 2, 2016, were made voluntarily. The Court further concludes that the delay in bringing McConnell to Court was reasonable in light of the factors set forth in Section 3501(c). The weight to be given to these statements must be left to the jury. That McConnell's first court appearance was more than six hours following his arrest does not mandate suppression under Section 3501(c). Finding no violation of Rule 5 or 18 U.S.C. § 3501(c), the Court concludes that neither suppression nor dismissal of the Indictment is justified. McConnell's motions must be denied.

**C.    Motion to Suppress Electronic Surveillance Evidence (ECF Nos. 603 and 623)[7]**

McConnell argues that the warrant to search email account xxx. xxlamez@yahoo.com was facially overbroad and lacked the requisite particularity to establish probable cause. ECF No. 652 at 31. The Government responds that the warrant was supported by probable cause and, even if the Court finds that it was not supported by probable cause, suppression of evidence obtained in reliance of the warrant is not justified under the good-faith exception. ECF No. at 667 at 57.

Assuming without deciding whether the search warrant lacked probable cause, the Court concludes that the evidence is nonetheless admissible under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984). *See also United States v. Clay*, 646 F.3d 1124 (8th Cir. 2011) ("[T]he exclusionary rule should not be applied so as to bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if that search warrant is later held to be invalid." (citing *Leon*, 468 U.S. at 900)). The Eighth Circuit has outlined four scenarios in which an officer's reliance on a warrant would be unreasonable: (1) the officer included information in the

---

[7] ECF No. 623 is the amended version of the motion filed at ECF No. 603.

affidavit that he knew was false or would have known was false except for his reckless disregard of the truth; (2) the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. *United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (citing *Leon*, 468 U.S. at 922). None of these scenarios are applicable here.

Agent Brill represented in the affidavit in support of the warrant, that the DEA had been investigating RX Limited since September 2007. The affidavit provides extensive information regarding RX Limited's alleged criminal activities and its alleged associates. Gov't. Ex. A., Aff.. ECF No. 640. Specifically, the affidavit identifies multiple phone numbers and email accounts allegedly used by RX Limited associates to facilitate the alleged conspiracy. *Id.* In addition, the affidavit provides background on RX Limited's organizational structure, federal drug laws and regulations allegedly violated, and information related to Yahoo!'s data and electronic storage services. It also provides a set description of the records and information to be provided by Yahoo! pursuant to the warrant's execution. *Id.*

There is no evidence that Agent Brill was dishonest or reckless in preparing the search warrant application, affidavit, or search warrant, nor is there evidence that indicates that the execution of the search warrant was constitutionally suspect, that the issuing judge failed to act in a neutral manner, or that the warrant was so facially deficient it would be unreasonable for an officer to rely on it. Fundamentally, agents conducting searches of email account xxx.xxlamez@yahoo.com had an objective, reasonable reliance on the issued warrant, precluding suppression. *Leon*, 468 U.S. at 922. Therefore, McConnell's motions must be denied.

### III. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. McConnell's motion to suppress (ECF No. 599) be **DENIED**.

2. McConnell's motions to dismiss and suppress statements (ECF Nos. 600, 604, and 616) be **DENIED**.

3. McConnell's motions to suppress electronic surveillance evidence (ECF Nos. 603 and 623) be **DENIED**.

DATED: December 23, 2016                                            *s/Franklin L. Noel*
                                                                                       FRANKLIN L. NOEL
                                                                                                United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 6, 2017**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 6, 2017** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.