## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Lachlan Scott McConnell (6),<br><br>    Defendant. | Case No. 13-cr-273 (SRN/FLN)<br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Linda I. Marks, Jacqueline Blaesi-Freed, U.S. Department of Justice, Consumer Protection Branch, 450 Fifth Street Northwest, Suite 6400, Washington, District of Columbia 20001, and Roger J. Gural, U.S. Department of Justice, Civil Division, P.O. Box 386, Washington, District of Columbia 20044, for Plaintiff.

Ryan M. Pacyga and Marie C. Pacyga, Pacyga and Associates, PA, 333 South Seventh Street, Suite 2850, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.  INTRODUCTION

   This matter comes before the undersigned United States District Judge on Defendant Lachlan Scott McConnell's Objections [Doc. No. 759] to United States Magistrate Judge Franklin L. Noel's Report and Recommendation ("R&R"), dated December 23, 2016 [Doc. No. 744].[1] The magistrate judge recommended that McConnell's motion to suppress [Doc.

---

[1] The Government also filed limited objections to the R&R, focusing on one alleged error in the magistrate judge's reasoning, and one factual error. (*See* Gov't Limited Obj. [Doc. No. 761]. Discussion of the alleged reasoning error is incorporated within this Order, and need not be otherwise addressed. As to the factual error, the Government contends that the magistrate judge erred in stating that "[t]he Government claims that the black flash drive contains classified material." (*See* R&R at 7 n.2.) According to the Government, it

No. 599], motions to dismiss and suppress [Doc. Nos. 600, 604, and 616], and motions to

suppress electronic surveillance [Doc. Nos. 603 and 623] be denied.

Pursuant to statute, this Court reviews de novo any portion of the magistrate judge's

opinion to which specific objections are made, and "may accept, reject, or modify, in whole

or in part, the findings or recommendations" contained in that opinion.  28 U.S.C. §

636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(C); D. Minn. LR 72.2(b)(3).  Based on that de

novo review, and for the reasons set forth below, the Court overrules Defendant's objections

and adopts the R&R in its entirety, with one clarification regarding statutory presentment.

## II.   BACKGROUND

The facts underpinning McConnell's motions have been thoroughly and accurately

documented in the Factual Background section of the R&R, which the Court incorporates

herein by reference.  Briefly stated, in November 2013, McConnell and ten other defendants

were indicted in connection with a scheme to market and sell illegal prescription drugs in

the United States.  (*See* Indictment [Doc. No. 5] ¶ 1.)  Of particular relevance here, the

Indictment alleges that McConnell "assisted with various aspects of the [scheme's]

operations, including establishing corporations, bank accounts, credit cards, and shipping

accounts, and pharmacy recruitment in the United States."  (*Id.* at ¶ 10.)  He has been

charged with one count of conspiracy to violate the Federal Food, Drug, and Cosmetic Act

("FDCA"), eleven counts of introducing misbranded drugs into interstate commerce, in

violation of the FDCA, one count of conspiracy to commit wire and mail fraud, eleven

---

does not claim that the black flash drive seized from McConnell contains classified
material.  (*See* Gov't Limited Obj. at 1-2.)  The Court notes the Government's
clarification of its position.

counts of mail fraud, six counts of wire fraud, and five counts of unlawful distribution and dispensing of controlled substances, in violation of the Controlled Substances Act.  (*See generally* Indictment.)

Although McConnell was indicted in 2013, he was not arrested for several years.  At the time of the indictment, McConnell was a resident of the Philippines.  Upon learning of the charges that had been brought against him, McConnell contacted the Federal Defender's Office for the District of Minnesota, and was appointed CJA counsel—Messrs. Andrew Birrell and Paul Dworak.  (Hr'g Tr. [Doc. No. 644] at 199, 260.)  Birrell and Dworak contacted McConnell several times over the course of 2014, and in August of that year notified the Government that McConnell was interested in cooperating.  (*Id.* at 177-78.)  The parties discussed options for transporting McConnell to the United States, but those discussions concluded without agreement in September 2014.  (*Id.* at 178, 183.)  In particular, one subject that proved a sticking point was the best way to get McConnell from the Philippines to Minnesota without unnecessary delay.  (*Id.* at 179.)  Because no direct commercial flights exist between Manila and Minneapolis, the parties were concerned that McConnell's prompt presentment right would require him to be presented before a magistrate judge in California, delaying his arrival in this jurisdiction.  (*Id.*)  To circumvent that difficulty, the parties considered a possible waiver of McConnell's presentment rights. (*Id.* at 179-80.)  Although no agreement was reached, Birrell and Dworak testified before the magistrate judge that they informed the Government that they continued to represent McConnell at least into early 2015.  (*Id.* at 138.)

McConnell is a Canadian citizen.  Sometime in early 2016, the Canadian government

revoked his passport.  (*Id.* at 247.)  In light of his status as a fugitive from U.S. justice and a foreigner present without a valid passport, the government of the Philippines charged McConnell with being an "unwanted/undesirable," and he was arrested by Filipino immigration officers on April 19, 2016.  (*See* Hr'g Def. Ex. 2.)  During the arrest, a single officer of the U.S. Drug Enforcement Administration ("DEA"), Special Agent Christopher Mueller, was present, but did not actively participate.  (*See* Hr'g Tr. at 193, 196.)

McConnell was taken to the Philippines Bureau of Immigration office in Manila, where he was brought to an office to meet with Special Agent Mueller.  (*Id.* at 194, 197-98.) After brief questioning regarding his identity, language proficiency, etc., Special Agent Mueller presented McConnell with DEA Form 13-A: Oral Warnings to be Given to a Subject Prior to Interrogation.  (*See* Hr'g Gov't Ex. 9.)  The form set forth McConnell's right to remain silent, advised that any statements made during questioning might be used against him, indicated that he had the right to an attorney, and that if he could not afford an attorney one would be appointed for him.  (*Id.*)  The document further asked if McConnell would be willing to answer some questions.  (*Id.*)  After reviewing the document, McConnell signed it, and was further briefly questioned by Special Agent Mueller.  (Hr'g Tr. at 255, 258.)

Following his interview with Special Agent Mueller, McConnell was detained by Philippines immigration authorities at a holding facility in Bicutan, Philippines, pending his deportation.  (*Id.* at 199.)  According to McConnell, conditions at the facility were substandard and he did not feel safe there.  (*Id.* at 201-02.)  Nonetheless, throughout his detention, McConnell retained access to his cell phone and two laptop computers, as well as

4

various hard drives, a thumb drive, a printer, and the internet. (*Id.* at 199, 264, 276.) In addition, McConnell was in regular contact with Special Agent Mueller, a close friend and "mentor" by the name of Jeff Williams, who had formerly worked for the U.S. Embassy in Manila, and personnel from the Canadian embassy. (*Id.* at 224, 225, 265, 268-69; Hr'g Def. Ex. C). McConnell did not attempt to contact either Birrell or Dworak during his detention at Bicutan. (Hr'g Tr. at 264-65.)

Shortly after his arrest, McConnell contacted Special Agent Mueller regarding arranging transportation to the United States. (*Id.* at 266, 272; Mueller Aff. [Doc. No. 667, Ex. A] ¶ 12.) Although he was aware that he could have sought deportation to Canada, where he would have been entitled to a lawyer in order to fight extradition to the United States, McConnell determined that travel to the United States was the preferable option to avoid delay in resolving his case. (Hr'g Tr. at 210, 272; Mueller Aff. ¶ 12.) Accordingly, over the next several weeks, McConnell worked with Special Agent Mueller and Canadian officials to secure the documentation required to allow him to leave the Philippines. (Hr'g Tr. at 205-06, 274.) Importantly, although McConnell's itinerary identified his ultimate destination as Vancouver, Canada, all parties—including Canadian consular officials— apparently understood that he would be detained by U.S. officials in Los Angeles. (*Id.* at 280-81; Mueller Aff. ¶ 14.)

While in custody in Bicutan, McConnell asked Special Agent Mueller if the DEA had the capabilities to repair an inoperable hard drive in his possession that he thought might be of use to them in their investigation. (Hr'g Tr. at 224; Hr'g Def. Ex. C.) At McConnell's request, Jeff Williams delivered the hard drive—along with two other hard

drives—to the DEA.  (Hr'g Tr. at 225.)  Although McConnell testified that he was "very surprised" that Williams had included the additional hard drives in the delivery, he did not ask for their return or otherwise indicate that the DEA should not search them.  (*Id.* at 225, 275-76.)

After finally securing the necessary travel documents, McConnell traveled by commercial flight from Manila to Los Angeles on June 1, 2016.  Although Special Agent Mueller and one other DEA agent escorted McConnell, he was not handcuffed during the flight, and was free to move about the aircraft.  (*Id.* at 287.)  At some point during the flight, Special Agent Mueller gave McConnell a form purporting to be a waiver of his prompt presentment and location of presentment rights, which McConnell read.  (*Id.* at 289-91; Hr'g Gov't Ex. 2.)

McConnell testified at the hearing before Magistrate Judge Noel that upon landing in Los Angeles, he was escorted off the plane by DEA agents and taken to an interview room in the airport terminal.  (Hr'g Tr. at 16, 18-20.)  While in the interview room, DEA Agent Kimberly Brill informed McConnell that he was under arrest, advised him of his *Miranda* rights, and presented him with a copy of DEA Form 13: Advice of Rights, which McConnell reviewed and signed.  (*Id.* at 22, 34, 77, 98, 288; Hr'g Gov't Ex. 1.)  McConnell was also presented with the waiver of presentment form that he had been shown earlier by Special Agent Mueller.  (Hr'g Gov't Ex. 2.)  After reviewing the form, McConnell signed it as well.  (Hr'g Tr. at 31-32, 290.)

During the subsequent interview, McConnell indicated that he was in possession of two laptop computers and a cell phone.  (*Id.* at 112-13.)  He was then presented with two

copies of DEA Form 88: Consent to Search.  (*See* Hr'g Gov't Exs. 3 and 4.)  These forms identified the seized electronic devices that the agents wished to search, namely, the three hard drives that Williams had given to Special Agent Mueller, the two laptops, and the cell phone. (Hr'g Tr. at 113-14.)  McConnell reviewed and signed both forms.  (*Id.*)

Around midnight, McConnell was escorted by DEA agents on a redeye flight to Minneapolis, which arrived at 5:30 AM on June 2, 2016.  (*Id.* at 41-42, 118.)  McConnell was subsequently presented and arraigned before Magistrate Judge Tony N. Leung at the federal courthouse in St. Paul, Minnesota, and then released to a local halfway house.  (*See id.* at 44; Minute Entry [Doc. No. 539].)  The following day, DEA agents brought McConnell his luggage and many of his personal effects.  (Hr'g Tr. at 44-45.)  While at the halfway house, McConnell volunteered the password to one of his laptop computers, and offered to show an agent the location of certain materials stored on the device.  (*Id.* at 46.)

## III.   DISCUSSION

As previously noted, the R&R addressed several motions filed by McConnell seeking to suppress various statements made to, and physical evidence seized by, the Government.  For clarity, the Court will address those motions in the order in which they were presented in the R&R.

### A.    Motion to Suppress [Doc. No. 599]

McConnell first moves to suppress any evidence obtained from the various electronic devices seized by the Government in the interim between his detention at the Bicutan facility on April 19, 2016 and his arrival in Minneapolis on June 2, 2016.  (*See generally* Def.'s Mot. to Suppress.)  Because the Government did not obtain a warrant

before the search and seizure of these devices, McConnell contends that the Government must show that its actions fit within one of the specifically established exceptions to the Fourth Amendment warrant requirement.   (*See* Def.'s Mem. in Supp. of Pretrial Mots. [Doc. No. 652] at 24.)   In response, the Government argues (1) that as an alien, McConnell is not entitled to Fourth Amendment protections for items seized outside of the United States; and (2) to the extent the Fourth Amendment does apply, the Government has met its burden of showing that McConnell consented to the search.   (*See* Gov't Resp. [Doc. No. 667] at 46.)   On this second point, McConnell argues that his consent was coerced and was thus invalid as a matter of law.   (Def.'s Mem. in Supp. of Pretrial Mots. at 28.)

The magistrate judge concluded that he did not need to address the Government's first argument because McConnell had clearly and voluntarily consented to the search and seizure of his electronic devices.   (R&R at 8.)   In support, Judge Noel noted that McConnell is an educated adult who had been advised of his rights, and had—throughout the period in question—the ability to communicate with friends and advisers, including his attorneys Birrell and Dworak.   (*Id.* at 8-9.)   Although he did not have to, McConnell volunteered to provide the inoperable hard drive to Special Agent Mueller shortly after being detained at Bicutan.   Judge Noel further observed that though McConnell did not authorize his friend Jeff Williams to deliver the other two hard drives to Special Agent Mueller, and expressed surprise that they had been handed over, at no point did he object to their search.   (*Id.* at 9.)   On the whole, the magistrate judge found that it was not unreasonable to conclude that McConnell had consented to the search of all three hard

drives.  (*Id.*)  Finally, with regard to McConnell's two laptop computers and cell phone, Judge Noel concluded that McConnell had voluntarily consented to the search when he signed the Consent to Search forms in Los Angeles.

Although McConnell objects to Judge Noel's legal conclusions regarding his motion to suppress, the Court finds that it need not address those objections here. Subsequent to the hearing before the magistrate judge, the parties apparently reached agreement that the Government would not use any of the evidence derived from its searches of the electronic devices during its case-in-chief.  (*See* Def.'s Mem. in Supp. of Obj. [Doc. No. 760] at 3 n.2; Gov't Resp. to Def.'s Obj. [Doc. No. 783] at 4.) Accordingly, both McConnell and the Government have advised the Court that this objection is moot.  (*Id.*)   Based on the parties' representations, the Court agrees. Defendant's objections to the Magistrate Judge's R&R—insofar as they relate to the Motion to Suppress—are accordingly overruled as moot.  *See United States v. Tenerelli*, No. 07-cr-194(1), 2008 WL 420018, at *2 (D. Minn. Feb. 13, 2008) (denying motion to suppress as moot based on government's representation that it did not intend to use at-issue statements in its case-in-chief).

## B.    Motions to Dismiss and Suppress Statements [Doc. Nos. 600, 604, 616]

### 1.    Objections Based on the Fifth and Sixth Amendments

McConnell argues that his statements made to DEA agents on April 19, 2016 and June 1, 2016 were obtained in violation of rights guaranteed to him by the Fifth and Sixth Amendments.  (*See generally* Def.'s Mem. in Supp. of Pretrial Mots. at 13-24.)   In particular, although he concedes that he was apprised of his *Miranda* rights and opted to

waive those rights on both dates, McConnell contends that his consent was the product of coercion and was thus invalid. (*Id.*) He further asserts that the Government improperly elicited statements from him outside the presence of counsel, despite knowing that he was represented by Messrs. Birrell and Dworak. (*Id.*) In light of these alleged Constitutional deficiencies, McConnell argues that the Court should suppress the at-issue statements and/or dismiss the indictment against him. (*Id.* at 24, 40.)

The Fifth Amendment provides in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." In furtherance of this right, the Supreme Court has held that evidence obtained as a result of a custodial interrogation may only be used against a defendant if he (1) is advised of his *Miranda* rights; and (2) voluntarily, knowingly, and intelligently waives those rights. *See United States v. Vanover*, 630 F.3d 1108, 1114 (8th Cir. 2011) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). A waiver is "knowing" if it is "made with a full awareness of both the nature of the right abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* The government bears the burden of showing that a defendant's *Miranda* waiver meets these requirements—failure to do so will result in any implicated statements being ruled inadmissible. *Miranda*, 384 U.S. at 475; *Stansbury v. California*, 511 U.S. 318, 322 (1994).

As relevant here, the Sixth Amendment grants the defendant the right to the assistance of counsel "[i]n all criminal prosecutions." The Supreme Court has interpreted

this right to mean that the defendant must be allowed to have counsel present at all "critical" stages of the criminal proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). "Once the Sixth Amendment right to counsel attaches, law enforcement authorities cannot 'deliberately elicit' incriminating statements from the accused in the absence of counsel." *United States v. Criswell*, 696 F.2d 636, 639 (8th Cir. 1983). Just as with his Fifth Amendment right against self-incrimination, the defendant may waive his Sixth Amendment right to counsel so long as the waiver is voluntary, knowing, and intelligent. *Montejo*, 556 U.S. at 786. Importantly, he may do so "whether or not he is already represented by counsel," and his decision to waive "need not itself be counseled." *Id.* Generally, so long as a defendant has been read his *Miranda* rights, his decision to waive his right to counsel will be considered knowing and intelligent. *Id.*; *see also Patterson v. Illinois*, 487 U.S. 285, 296 (1988).

Reviewing the evidence against these standards, Judge Noel concluded that McConnell knowingly, voluntarily, and intelligently waived his Fifth and Sixth Amendment rights before making the statements at issue here. (*See* R&R at 12-13.) This Court agrees. Looking first to the statements made on April 19, 2016, two important facts stand out. First, it is undisputed that before being questioned by Special Agent Mueller, McConnell was presented with—and signed—a form advising him of his *Miranda* rights. Second, although McConnell contends that the "DEA created the situation that [his] only meaningful way to leave Bicutan detention facility was to do DEA's bidding"—implying that McConnell was coerced into making statements in order to escape indefinite incarceration in the Philippines—the April 19 questioning took place

both before McConnell had been sent to Bicutan and before he claimed that he offered to cooperate with the DEA in order to achieve expedited release. Thus, whatever potential for coercion Bicutan may have offered was not implicated at this initial interview. Instead, McConnell's own testimony demonstrates that the first meeting with Special Agent Mueller was brief and amicable, and that in the following weeks, McConnell was an active and willing participant in cooperating with the DEA.

Similar facts vitiate any concerns relating to possible coercion on June 1, 2016. The record reveals that before being questioned both on the flight to Los Angeles and at the DEA facility at Los Angeles International Airport, McConnell was properly advised of his *Miranda* rights, and once again chose to waive those rights and speak with DEA officials. Any claim that at this point in time McConnell was still under the coercive threat of remaining in Bicutan—now located several thousand miles away—is plainly not credible. Likewise, the Court finds no merit in the argument that because McConnell was handcuffed and in the presence of armed officers at the time of the second questioning, he was necessarily subject to coercive pressure. The Eighth Circuit has made plain that these facts alone are insufficient to demonstrate lack of voluntariness in a waiver of *Miranda* rights. *See, e.g.*, *United States v. Comstock*, 531 F.3d 667, 677 (8th Cir. 2008) (handcuffing not unduly coercive); *United States v. Axsom*, 289 F.3d 496, 501 (8th Cir. 2002) (presence of nine armed officers during interview not unduly coercive). Absent those facts, the Court sees nothing in the record that indicates coercion. McConnell is an educated adult with extensive experience with law enforcement and high pressure situations. By his own description, he was treated "very, very well" by the DEA agents

in Los Angeles.  (Hr'g Tr. at 288.)  Taken as a whole, McConnell's claims of coercion on

June 1, 2016 are not plausible.

Finally, the Court finds no merit to McConnell's suggestions that the DEA

"systematically watered down" his right to counsel in a manner that violated the Sixth

Amendment.  (Def.'s Mem. in Supp. of Obj. at 3.)  The record reveals that although

McConnell was aware that he was represented by Messrs. Birrell and Dworak, he was

also aware of his right to speak with investigators notwithstanding that representation.

What is lacking from the record is clear evidence to show—as McConnell contends—that

the DEA agents with whom he interacted somehow deprived McConnell of access to his

attorneys or improperly steered him into making statements outside the presence of

counsel.  Notably, at no time during the forty days between his April 19 interview with

Special Agent Mueller and his interviews on June 1 did McConnell attempt to reach out

to Birrell or Dworak—or any other attorney—despite having ample access to phone and

internet communications and the advice of friends and Canadian embassy officials.  As

the Court has already noted, it is the defendant's right at any time to waive representation

and speak to law enforcement—even if he is already represented.  *Montejo*, 556 U.S. at

786.  So long as his decision to do so is knowing, intelligent, and voluntary, the concerns

embodied in the Sixth Amendment are not implicated.  A careful review of the record

before the Court shows that McConnell knowingly exercised this right, and his decision

to do so was not improperly influenced.   Accordingly, there was no error in the

magistrate judge's determination, and McConnell's objections as to his motions to

suppress statements are overruled.

### 2.    Objections Based on the Statutory Right to Presentment

In addition to his constitutional objections, McConnell contends that the manner in which he was first presented to a magistrate judge upon arrival in the United States violated his procedural rights under the Federal Rules of Criminal Procedure. Specifically, McConnell directs the Court's attention to Rule 5, which generally requires that upon arrest a defendant must be brought before a magistrate judge "without unnecessary delay" and in the district where he was arrested. *See* Fed. R. Crim. P. 5(a), (c). Before Judge Noel, McConnell argued that he was effectively arrested on April 19, 2016, when he was taken into custody by the Filipino authorities. Because he was not presented to a magistrate judge until June 2, 2016, he claims that he was not promptly presented as required by Rule 5. (*See* R&R at 13.) In addition, McConnell contends that, pursuant to Rule 5(c)(2), he should have been presented to a magistrate judge in the Central District of California (embracing Los Angeles), rather than the District of Minnesota. On the basis of these perceived defects in proper procedure, he urges the Court to dismiss the Indictment against him, or at the very least, suppress those statements made in violation of his prompt right to presentment. (*See* Def.'s Mem. in Supp. of Pretrial Mots. at 24, 40.)

The Government attacks McConnell's arguments on two fronts. First, it argues that the procedural rights embodied by Rule 5 may be waived by the defendant, and that McConnell did just that when he signed the waiver of prompt presentment and location of presentment form at Los Angeles airport on June 1, 2016. (Gov't Resp. at 30-36.) Second, it claims that even if McConnell's waiver is disregarded, he was still presented to

a magistrate judge without undue delay and in full compliance with the requirements of the Rule. (*Id.* at 44-45.)

Considering the arguments of the parties, Judge Noel rejected the Government's first contention but accepted the second. Specifically, he concluded that a defendant cannot waive the right to prompt presentment or to the location of that presentment, making the form signed by McConnell ineffective. (R&R at 14, 16-17.) Nonetheless, the magistrate judge determined that McConnell had been properly presented. Rejecting the defendant's arguments, he found that McConnell had been arrested for purposes of Rule 5 not on April 19, but on June 1, when he was transferred to the custody of the DEA at Manila airport. Noting that the direct, thirteen-hour flight from Manila to Los Angeles landed at approximately 7:00 PM local time—after the courts had closed—Judge Noel concluded that McConnell could not have been presented to a magistrate judge before June 2 in an event. (*Id.* at 16.) In light of this fact, the judge concluded that bringing McConnell before a magistrate judge in Minnesota, in the first instance, did not result in "unnecessary delay." (*Id.* at 18.)

Having carefully reviewed the record and the relevant statutory and case law, the Court agrees with Judge Noel that McConnell's Rule 5 rights were not violated. The Court respectfully differs from the magistrate judge, however, in its reasoning. Although it is true that neither the Eighth Circuit nor this Court have previously addressed the matter, several courts have concluded that the procedural safeguards encompassed by Rule 5 can indeed be waived by the defendant. *See, e.g.*, *United States v. Thompson*, 772 F.3d 752, 762 (3d Cir. 2014) (observing that government could have sought a timely

waiver of right to prompt presentment); *United States v. Jacques*, 744 F.3d 804, 815 (1st Cir. 2014) (upholding effectiveness of waiver of prompt presentment); *United States v. McDowell*, 687 F.3d 904, 910 (7th Cir. 2012) (declaring that "like other important rights, the right to prompt presentment may be waived"); *United States v. Cabrera*, No. 05-cr-1278 (NRB), 2008 WL 2803902, at *5 (S.D.N.Y. July 15, 2008) ("Delays attributable to a defendant's cooperation with law enforcement officials, particularly when the defendant has knowingly and voluntarily waived his right to speedy presentment, have been routinely found to be reasonable by the district courts in the Second Circuit.") Notably, courts have been particularly permissive of a defendant's waiver of his presentment rights when he has previously been given his *Miranda* warnings, as was the case here. *See United States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985) ("A waiver of *Miranda* rights constitutes a waiver of the rights under Rule 5."); *United States v. Barlow*, 693 F.2d 954, 959 (6th Cir. 1982) ("In the instant case appellant . . . waived his *Miranda* rights before giving his statement to the FBI. He now cannot seek the protection of Rule 5(a)."). Because the Court concludes that these holdings are in keeping with the general presumption in favor of a defendant's right to waive his rights, *New York v. Hill*, 528 U.S. 110, 114 (2000), it joins the broad consensus in favor of upholding the validity of Rule 5 waivers.

The question now becomes whether McConnell's waiver of his Rule 5 rights was knowing, intelligent, and voluntary. On review of the record, the Court concludes that it was. Significantly, McConnell had been repeatedly apprised of his *Miranda* rights prior to being presented with the waiver form, and no evidence exists to suggest that he was

improperly coerced into signing it.   Indeed, the record implies that—far from being opposed to initial presentment in Minnesota—McConnell considered that to be the preferable option. (*See* Mueller Aff. ¶ 15.)   All told therefore, the Court concludes that McConnell waived his rights under Rule 5, and cannot now seek suppression of any statements on that basis.[2]   *See McDowell*, 687 F.3d at 910 ("By giving up the right to prompt presentment, [defendant] necessarily gave up the corresponding remedy . . . .").

Because the Court agrees with the Government on this issue, it need not consider whether McConnell's presentment was proper even absent the waiver.

## C.   Motions to Suppress Electronic Surveillance Evidence [Doc. Nos. 603, 623]

Finally, McConnell moves to suppress evidence seized pursuant to a search warrant for the [xxx.xx]lamez@yahoo.com email account, on the basis that the warrant was facially overbroad and lacking in the particularity necessary to establish probable cause.   (*See* Def.'s Mem. in Supp. of Pretrial Mots. at 31.)   In response, the Government argued before the magistrate judge that the search warrant was properly supported by probable cause and contained limitations and specifications sufficient to render it not overbroad.   (*See* Gov't Resp. at 51.)   In the alternative, the Government contended that the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984), should apply.

---

[2]   Although McConnell urges the Court to consider dismissing the Indictment as punishment for the alleged violation of his Rule 5 rights, the Eighth Circuit has made clear that this remedy is not available for what is, ultimately, a procedural violation only. *See United States v. Chavez*, 705 F.3d 381, 385-86 (8th Cir. 2013) (noting that the "appropriate remedy" for a Rule 5 violation "would be suppression of the statements made during that period, not dismissal of the indictment").

Judge Noel ultimately agreed with the Government that the good-faith exception under *Leon* precluded suppression of the evidence.  (*See* R&R at 18.)  Assuming without deciding that the search warrant lacked probable cause, the magistrate judge examined the four scenarios in which an officer's reliance on a warrant would be unreasonable such that suppression is required: (1) where the officer included information in the affidavit that he knew was false or would have known was false except for his reckless disregard for the truth; (2) where the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) where the judge failed to act in a neutral and detached manner; or (4) where the warrant is so facially deficient that the officer cannot reasonably presume it to be valid.  (R&R at 18-19 (citing *United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996).)  Reviewing the warrant and the record evidence, the magistrate judge concluded that none of these scenarios was implicated here.  (R&R at 19.)

The Court agrees.  Even assuming that the search warrant lacked probable cause, there is no evidence that the supporting affidavit included information that the testifying agent knew to be false or should have known was false.  Likewise, nothing in the record suggests that the affidavit was so severely deficient in terms of probable cause as to make reliance on it objectively unreasonable.  Finally, there is no evidence that the issuing judge failed to act in a neutral manner, or that the warrant is so facially deficient that it would be unreasonable to presume its validity.  Reliance on the issued warrant was not unreasonable, and thus McConnell's motion to suppress the evidence garnered from search of the email account must be denied.

## IV.   ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendant's Objections to the Magistrate Judge's December 23, 2016 Report and Recommendation [Doc. No. 759] are **OVERRULED**;

2. Except where specifically indicated otherwise, the Court **ADOPTS** the Report and Recommendation [Doc. No. 744];

3. Defendant's Motion to Suppress [Doc. No. 599] is **DENIED** as moot; and

4. Defendant's Motions to Dismiss and Suppress [Doc. Nos. 600, 604, and 616] and Motions to Suppress Electronic Surveillance [Doc. Nos. 603 and 623] are **DENIED**.


Dated: January 30, 2017              s/Susan Richard Nelson
                                     SUSAN RICHARD NELSON
                                     United States District Judge